DeLuca *v.* Reader et al., Appellants.

Argued November 12, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

Before WEKSELMAN, J.

*E. Carl Uehlein, Jr.,* with him *Harley N. Trice, II, Avrum M. Goldberg, Edward N. Stoner, II,* and *Reed, Smith, Shaw & McClay,* and *Morgan, Lewis & Bockius,* for appellants.

*Joseph A. Steedle,* for appellee.

OPINION BY WATKINS, P. J., April 3, 1974:

This is an appeal from the judgment of the Court of Common Pleas of Allegheny County, Civil Division,

in an action of trespass for libel entered on a jury verdict in the amount of $1,200.00 in favor of the plaintiff-appellee, Mario DeLuca, and against the defendants-appellants, C. B. Reader and Motor Freight Express, Inc.

The employee-appellee is a City Driver employed by the appellant to make freight deliveries in less-than-truckload lots in the metropolitan Pittsburgh area. He was so employed since 1956. He was discharged on May 17, 1971, for failure to turn in a collected item of $9.20. The appellant, by letter, charged him with "dishonestly withholding company funds."

The company relies on the trustworthiness of their drivers to report the correct amount of cash collections on the cash collection cards provided for that purpose. A receipt is given to the customer and the carbon copy is turned into the company with the money. Failure to comply with this rule results in the company billing the customers a second time who have already paid the driver and have a receipt of payment. This creates resentment on the part of the customers and embarrassment to the company.

Early in 1971, the company was having an unusual amount of difficulty with its customers as a result of drivers failing to turn in collected funds. The company discharged an employee by the name of Bova for dishonestly withholding company funds. The arbitrators refused to sustain the discharge of Bova but held that he should be suspended for nine weeks without pay for his conduct. As a result of this case, the union and the company by agreement provided for a notice to be posted in a conspicuous place concerning collections. In accordance with the agreement, the following notice was posted:

"To All Teamster Employees

"Effective immediately, all collections are to be turned in at the end of the shift for that day to the

Cashier. In accordance with the decision rendered by Joint Council No. 40 dated April 13, 1971, failure to comply with this decision will result in termination of your employment."

On January 7, 1971, the appellee failed to turn in cash collections made from Best Coffee and Tea Company and in consequence the company sent the appellee a Warning Letter on March 17, 1971, which stated in part:

"Motor Freight Express billed this customer to collect the freight charges due but were advised cash had been paid to you at the time of delivery with receipts to substantiate the same.

"Your failure to surrender monies to Motor Freight Express or properly indicate collection received on your submitted Cash Collection Card to the Cashier is considered to be negligence on your part. It is recognized that after discussion with you about the above mentioned shortage you did reimburse Motor Freight Express on March 12, 1971.

"In view of the above this letter is issued as a WARNING LETTER. You will be expected to exercise more care in the future as violation of this nature will result in disciplinary action."

Shortly thereafter, the company received a call from a customer concerning a bill for a delivery made on May 7, 1971, which had been paid and for which the customer had a receipt of the delivery driver, the appellee. When confronted with this matter, the appellee admitted that he had not made the return and said that it was an oversight caused by the activities of the day.

It is interesting to note that the customer's receipt was properly filled out with the amount of payment, but the company's copy did not have the amount of money paid and as it was necessary to have the receipt

of the customer so marked the carbon must have been removed or the company's copy would be identical.

On May 17, 1971, the Company District Manager and appellant herein advised the appellee that he was discharged because of his failure to turn in the money collected and his failure to note the cash collection on the company's receipt.

On May 18, 1971, the District Manager sent the following letter to the appellee confirming his discharge.

"This letter will confirm my conversation with you and Teamster Employee James Bova on May 17, 1971 regarding your immediate discharge from the Employ of Motor Freight Express. Your failure to surrender monies collected on May 7, 1971 or indicate the collection on your submitted Cash Collect Card and your failure to indicate the payment on the Company's delivery receipt from Stoecklein's Fox Chapel Bakery Shop, Pittsburgh, Pennsylvania, pro No. 09-484185 is considered to be dishonestly withholding Company funds.

"On March 17, 1971, you were issued a letter of Warning for withholding Company funds and the Company accepted reimbursement from you after confronting you with the shortage.

"As a result of the Joint Area Committee decision dated April 13, 1971, this Company was required to post a notice stating that all collections be turned in at the end of each day. This posted notice dated April 23, 1971 advising all employees of the results of failure to comply with the decision of the Joint Area Committee decision leaves this company no alternative but to take the above action.

"In accordance with Article 47 of the Nation Master Freight Agreement and Local Cartage Supplement your employment has been terminated effective May

17, 1971 and your name removed from the seniority list of Motor Freight Express."

The appellee then filed a grievance under the terms of the Collective Bargaining Agreement and the following order was handed down:

"The Arbitrator therefore concludes the discharge of the grievant was without just cause. His conduct, however, warranted a disciplinary suspension of five working days.

"The grievant shall be reinstated in his job with full seniority and with reimbursement for pay lost since the date of his discharge on May 18, 1971, less five days' pay as the result of his disciplinary suspension, and less earnings received elsewhere during the period following his discharge.

"The charge of 'dishonestly withholding Company funds' shall be expunged from the grievant's employment record."

The real effect of the order was that although he violated the rules, the penalty was too severe and the charge of "dishonestly withholding company funds" was expunged from the record and the discharge was changed to a suspension.

The appellee then instituted this action in trespass for libel based on the letter. A trial was held and a jury rendered a verdict in favor of the appellee in the amount of $1,200.00. This appeal followed.

It is established by the record that the appellee was a member of the union. It was a bargaining agent for the employees of the appellant company and he did avail himself of the grievance machinery and did agree to be bound thereby. The letter forming the basis of the action was not unusually published having been sent to the appellee, a vice president of the union, the union business agent and the union shop steward, all persons having an interest in this proceeding and in accordance with the written contract.

The provisions of the Collective Bargaining Agreement pertinent to this dispute are as follows:

Article 46—Grievance Machinery

Section 1(d) . . . The Board of Arbitration shall have jurisdiction and authority to interpret, apply or determine the compliance with the provisions of this Agreement, but the Board of Arbitration shall not have jurisdiction or authority to add to, detract from or alter in any way the provisions of this Agreement.

Article 47—Discharge or Suspension.

The Employer shall not discharge nor suspend any employee without just cause. The employer shall not discharge any employee without notice except if the cause of discharge is dishonesty, drunkenness, recklessness resulting in a serious accident while on duty, the carrying of unauthorized passengers while on the job, or the use of narcotics (as described by the Pure Food and Drug Act).

In all other cases, the Employer must notify the employee and the Steward in writing of the reason for disciplinary action and the disciplinary action to be taken; and the Steward or the Business Agent of the Local Union may meet with the Employer to discuss the proposed disciplinary action before such action is taken if such meeting is held within 3 days (72 hours) of the employee's receipt of notice. At the end of the 3 day (72 hours) period, or at the end of the meeting with the Local Union if such meeting is held earlier, the Employer may take such action as notified or agreed to. The Employee may, if no agreement is reached by the Local Union and the Employer file a grievance in accord with the contract.

The letter was couched in language required by the Collective Bargaining Agreement in the case of discharge. There was a real basis for the sending of the letter in view of a doubt as to whether the notice posted

by agreement or the provisions of the collective bargaining agreement would prevail. The employer, who is a party to the collective bargaining agreement, is placed in a tight quandary as to the discharge of an employee when by acting under the terms of the agreement he is subjected to an action of libel.

The appellants contend (1) that as a matter of law the statements contained in the letter issued pursuant to the collective bargaining agreement is absolutely privileged; (2) that as a member of a union the appellee consented to the terms and conditions contained in the collective bargaining agreement, i.e., dishonestly withholding company funds as a cause of discharge so that the action is barred as a matter of law; and (3) the statements, if not absolutely privileged, are conditionally privileged and there is no evidence of the abuse of such provisions. Both the National Labor Policy enunciated by Congress and the Labor Policy of the Commonwealth of Pennsylvania favor the settlement of labor disputes between the parties rather than resort to the courts. However, we do not believe that this prevents seeking redress in the courts so that the court had jurisdiction of this trespass action. *Meyer v. Joint Council 53, I. B. of Teamsters*, 416 Pa. 401, 206 A. 2d 382 (1965).

However, the question of privilege is another matter. In express furtherance of this policy of private resolution of disputes between employers and employees and unions, the courts have held such remarks are absolutely privileged. *G.M.C. v. Mendicki*, 367 F. 2d 66 (10th Cir., 1966); *Joftes v. Kaufman*, 324 F. Supp. 660 (D.C., 1971); *Neece v. Kantu*, 82 LRRM 2517 (N.M. Ct. App., 1973).

In the *Joftes* case, supra, the court said at page 662: "All these arguments (of the Defendant's) point in the direction of one principle: that notices of dismissal for cause which are contemplated by a collec-

tive bargaining agreement and which are published by the employer only to those with a legitimate interest in the subject matter may not be made the subject of an action in libel, regardless of whether the allegations of cause are true or false and regardless of the actual motive behind the dismissal. *This principle finds ample support in the law and requires that summary judgment be entered for defendants as to each cause of action."* Joftes v. Kaufman, 324 F. Supp. 660, at 662 (D.C., 1971). (Emphasis supplied.)

In the matter of consent, the Court in *Joftes,* supra, stated at page 663: "By virtue of his membership in the Staff Association, Joftes had consented to a written statement of cause in the event of his dismissal. Whatever may be his remedies for an unjust dismissal, they certainly do not include an action in libel based on the letters announcing it." See also, *Bufalino v. Teller,* 209 F. Supp. 866 (M.D. Pa. 1962).

The Court went on further in *Joftes,* supra, at page 663: "To hold the contrary would bring the law of defamation into serious conflict with principles governing employment relations."

Malice is essential to an action for defamation. 22 P.L.E. 239. Here there is no malice. The employer reasonably believed that the employee was guilty of "dishonesty" in not turning in the funds. There is no reckless or wanton disregard of the employee's rights or a want of reasonable care to ascertain the truth or falsity of the statement. Indeed it may be true. So, despite absolute privilege, the agreement, and consent, I do not think that malice exists and therefore, no cause in action for libel exists. *Purcell v. Westinghouse Broadcasting Co.,* 411 Pa. 167, 191 A. 2d 662 (1963). The principles of law for defamation support the conclusion that the letter was privileged. Restatement of Torts, §§582, 583.

Judgment reversed and judgment n.o.v. entered.