Herman SMITH, Plaintiff,

v.

**GREYHOUND LINES, INC., Defendant.**

**Civ. A. No. 83–628.**

United States District Court,
W.D. Pennsylvania.

Aug. 29, 1984.

David F. Weiner, Gallo & Weiner, Pittsburgh, Pa., for plaintiff.

Walter G. Bleil, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

MANSMANN, District Judge.

This action is before the Court on Defendant's Motion for Summary Judgment. For the reasons stated below, Defendant's Motion is granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Herman Smith, was employed for approximately 13 years as a clerk for Defendant, Greyhound Lines, Inc. Plaintiff's job required him to receive packages to be shipped from customers and either to accept cash or to charge the transaction to the shipper or receiver. Plaintiff is a member of Local 1063 of the Amalgamated Transit Workers Union. The union has a collective bargaining agreement with Defendant.

On March 22, 1982, a salesman from Rawlplug Company brought two packages to Plaintiff's counter. Plaintiff marked the receipt "charge." When Defendant later billed the company, a Rawlplug Company official informed Defendant that the company had no charge account at Greyhound and that the salesman had paid cash.

Howard Kratovel, terminal manager, began an investigation of the incident. Mr. Kratovel called the Rawlplug Company salesman who had delivered the packages and was told that the salesman had indeed paid cash. Mr. Kratovel also called upon Plaintiff to explain the discrepancy. The investigation culminated with Plaintiff's termination on May 20, 1982. At that time, Plaintiff was given a notice outlining the reason for his discharge. The notice stated:

> On March 22, 1982, you accepted two packages and shipped them to Erie, PA., under Prepaid NBO Busbills # 200 231 199 3 and 200 231 198 2. The shipper paid cash in the amount of $32.60 ($16.30 each). Since you failed to report or turn in the cash, and due to the serious nature of this offense, you are hereby discharged from the services of Greyhound Lines, Inc., effective May 20, 1982.

Plaintiff pursued a grievance relative to this discharge through union procedures.

On June 9, 1982, Plaintiff met with members of Defendant's management and with union representatives to discuss the discharge. That evening Joe O'Shea, union president, called Plaintiff and conveyed Defendant's offer of a polygraph examination.

Mr. O'Shea told Plaintiff that if he passed the polygraph exam, Defendant would reinstate him with backpay. Mr. O'Shea and Defendant claim the deal also included a promise to drop the grievance if Plaintiff failed the test. Plaintiff denies ever hearing about this portion of the bargain.

Plaintiff initially refused to take the polygraph. After consulting with his wife, who told him he had nothing to lose, Plaintiff agreed to take the test. On June 23, 1982, Plaintiff went to a room in the Hilton Hotel, signed a release, and took the polygraph test. The examiner reported to Defendant that Plaintiff had failed the test. Subsequently, Plaintiff's grievance was dropped.

On February 17, 1983, Plaintiff filed a complaint alleging wrongful discharge, defamation, assault and battery, and invasion of privacy in the Court of Common Pleas of Allegheny County. On Defendant's petition for removal, the case was removed to this Court on the basis of diversity of citizenship and the presence of a federal question, *i.e.*, that Plaintiff's wrongful discharge claim is solely cognizable under section 301 of the Labor-Management Relations Act (the "LMRA"), 29 U.S.C. § 185 (1978). Defendant now moves for summary judgment.

## DISCUSSION

Under Fed.R.C.P. 56(c) summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Sames v. Gable*, 732 F.2d 49, 51 (3d Cir.1984). The Court of Appeals for the Third Circuit has made it clear that any doubts as to the existence of genuine issues of fact are to be resolved against the moving parties. *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). Further, the facts and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Conti-*

*nental Ins. Co. v. Bodie*, 682 F.2d at 438; *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 404 (3d Cir.1981).

Under Rule 56(e), however, a party resisting a summary judgment motion may not rest upon the mere allegations or denials of his pleading. *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). In opposing the motion, his response "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Id.*

As a general rule, courts do not favor the summary disposition of cases on their merits. Nevertheless, in an appropriate case, an early disposition may save the parties needless and often considerable time and expense which otherwise would be incurred during trial. Thus, summary judgment is a useful tool when the record reflects that there is no genuine dispute over the critical facts. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir.1982).

While remaining cognizant of the above-noted standards, this Court will consider Defendant's motion for summary judgment in the context of each of the Counts alleged in Plaintiff's Complaint: Wrongful Discharge, Defamation, Assault and Battery, and Invasion of Privacy.

### Wrongful Discharge

■ The Plaintiff alleges that the Defendant is liable in tort for wrongful discharge based on the use of a polygraph in contravention of the public policy set forth in 18 PA.CONS.STAT. § 7321(a) (1983). While Pennsylvania recognizes a wrongful discharge tort where an employee is required to submit to a polygraph as a condition of employment or the continuation of employment, that tort, under Pennsylvania law, is designed solely for the protection of at-will employees. *See Polsky v. Radio Shack*, 666 F.2d 824, 826 (3d Cir.1981); *Perks v. Firestone Tire and Rubber Co.*, 611 F.2d 1363, 1365 (3d Cir.1979). Indeed, the courts have refused to extend the wrongful discharge tort to Plaintiffs who either are not at-will employees, *Hyman v.*

*Dart and Kraft, Inc.,* No. 83–2324, slip op. at 16 (W.D.Pa. April 5, 1984); *Harrison v. Fred S. James, P.A., Inc.,* 558 F.Supp. 438, 444 (E.D.Pa.1983), or who have an alternative statutory remedy, *Wolk v. Saks Fifth Avenue, Inc.,* 728 F.2d 221, 223 (3d Cir. 1984), *reh'g denied* (1984). The United States District Court for the Eastern District of Pennsylvania explained:

> The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated.

*Wehr v. Burroughs Corp.,* 438 F.Supp. 1052, 1054 (E.D.Pa.1977).

 Plaintiff was not an at-will employee. Rather, he was employed by Defendant full-time subject to the terms of a collective bargaining agreement which contained a mandatory grievance procedure for all discharge cases. Since he may have had a cause of action pursuant to section 301 of the Labor-Management Relations Act,[1] 29 U.S.C. § 185 (1978), he may not avail himself of the cause of action developed to protect the at-will employee, the wrongful discharge tort.[2] Given this disposition, it is not necessary to reach the question of whether the availability of a remedy under § 301 preempts the tort of wrongful discharge.

For these reasons Defendant's Motion for Summary Judgment is granted with respect to the wrongful discharge count.

*Defamation*

Where the slander is allegedly committed in Pennsylvania, state law applies. *Harbridge v. Greyhound Lines, Inc.,* 294

F.Supp. 1059, 1063 (E.D.Pa.1969). For the tort of defamation Plaintiff has the burden of proving the defamatory character of the communication, its publication by the Defendant, its application to the Plaintiff, the understanding by the recipient of both its defamatory meaning and its application to Plaintiff, special harm, and abuse of a conditionally privileged occasion. 42 PA. CONS.STAT. § 8343 (1982). Defendant bears the burden of proving the truth of the communication, the existence of a privilege, or that the matter is of public concern.

The Plaintiff alleges a cause of action for defamation based on circumstances arising out of Plaintiff's discharge and his polygraph test. Four possible sources of defamatory statements are raised by Plaintiff in the Complaint and the Statement of Genuine Issues of Fact: (1) the termination notice; (2) statements made regarding the discharge and the polygraph test during meetings between the Defendant, the Union, and the Plaintiff; (3) publication of those or similar statements to Defendant's non-management employees; and (4) the termination itself. We will address each of these in order.

 First, this Court finds that the termination notice by itself was not defamatory. There is no dispute as to the exact wording of the notice, nor is its truth disputed by the Plaintiff. Truth is an absolute defense to defamation. *Harbridge v. Greyhound Lines, Inc.,* 294 F.Supp. at 1064; Restatement (Second) of Torts, § 581A (1977). In addition, the policy of favoring private resolution of disputes between employers, employees and unions has led to the creation of an absolute privilege for such discharge notices. *DeLuca v. Reader,* 227 Pa.Super. 392, 399–400, 323 A.2d 309, 313 (1974).

---

1. The Plaintiff does not allege a § 301 action here and cannot do so now because he would be time-barred by the applicable statute of limitations.

2. The Plaintiff cites this Court's Opinion in *Shaw v. Russell Trucking Line, Inc.,* 542 F.Supp. 776, 779 (W.D.Pa.1982), to support the claim

that Plaintiff has a cause of action under both § 301 of the LMRA and the wrongful discharge tort. The *Shaw* opinion, however, did not reach the question of whether the wrongful discharge tort would be extended beyond the at-will employment setting.

Second, Plaintiff claims that the statements made in meetings between the Defendant, the Union and the Plaintiff are not conditionally privileged or, if they are, that Defendant has lost that privilege by abuse. One who allegedly publishes defamatory matter is not liable if it is published on a conditionally privileged occasion. *Harbridge v. Greyhound Lines, Inc.*, 294 F.Supp. at 1065; Restatement (Second) of Torts, § 558 (1977). An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know. *Harbridge v. Greyhound Lines, Inc.*, 294 F.Supp. at 1065; Restatement (Second) of Torts, § 596 (1977).

Plaintiff offers no evidence that those present at the May 20, 1982, discharge or at any other meeting included any one other than those employees with a legitimate interest in the proceedings. The persons involved in Plaintiff's termination included Mr. Kratovel, Terminal Manager; Mr. Curry, District Manager; Mr. Anderson, Regional Field Director; Mr. Salisbury, Auditor of Terminal Accounts; Mr. Peyton, Regional Vice-president; and Mr. Parnell, Regional Director. The only persons present at Plaintiff's discharge were Mr. Kratovel; Mr. Byrne, Assistant Terminal Manager; Mr. O'Shea, Union President; and Mr. Newsom, Union Representative. The meeting and discharge concerned matters of interest to those present: the money shortage and the Plaintiff's discharge. Similarly, those present at the June 9, 1982 meeting to discuss Plaintiff's grievance included only legitimately interested parties. Thus, these are conditionally privileged occasions.

The conditional privilege can be lost by abuse if Defendant is motivated solely by spite or ill will to the Plaintiff instead of the protection of the legitimate common interest. *Campbell v. Willmark Service System, Inc.*, 123 F.2d 204, 206–07 (3d Cir.1941). In addition, the privilege will be lost if the statements are false, and Defendant acts in reckless disregard as to whether they are false. *Berg v. Consolidated Freightways, Inc.*, 280 Pa.Super. 495, 501, 421 A.2d 831, 834 (1980), *petition for allowance of appeal denied* (1981). There is no evidence in the instant case that Defendant was motivated by any desire other than protecting the work place. Thus, the conditional privilege is not lost.

Third, Plaintiff alleges that Mr. Kratovel and other management personnel disclosed to non-management employees and others that Plaintiff was discharged for theft and had failed the polygraph test. It is Plaintiff's burden to prove publication by Defendant. 42 PA.CONS.STAT. § 8343(a)(2) (1982).

Plaintiff notes that Mary Ellen Malley, secretary to Mr. Kratovel, typed up the discharge form and, therefore, knew of the discharge and its purpose. Plaintiff also points to the testimony that Ray Peacoe, treasurer of the credit union, knew of the discharge. As explained above, however, publication of allegedly defamatory material to such interested and necessary parties is protected by a conditional privilege. In addition, the information in the notice, which Ms. Malley had access to, is undisputedly true.

Plaintiff's deposition as well as Herbert Jackson's statement indicate that talk about Plaintiff's discharge and failure to pass the polygraph test was widespread. Plaintiff also testified that Mr. Smith, a collection agent, knew of the discharge and test. As noted above, it is Plaintiff's burden to prove publication by Defendant. A defendant is not responsible, as a matter of law, for idle statements made in the terminal when there is no evidence that any employee spoke as an official in the scope of employment. *Harbridge v. Greyhound Lines, Inc.*, 294 F.Supp. at 1065. There is no evidence that Defendant published any of the statements regarding termination "for theft" or the failure of the polygraph test.

■ Finally, Plaintiff claims that the actual termination "for theft" as well as the request for and administration of the polygraph test constitute defamation. This Court cannot agree. Defendant's suggestion of a polygraph test is not defamatory in nature and is conditionally privileged. *See Id.* The actual administration of the polygraph is not defamatory in nature. The discharge is part of the employer-employee relationship and subject to the collective bargaining agreement. As such it must be at least conditionally privileged, (*see DeLuca v. Reader,* 227 Pa.Super. at 399–400, 323 A.2d at 313), subject to failure of the privilege where abuse is shown. *Id.; Berg v. Consolidated Freightways, Inc.,* 280 Pa.Super. at 501, 421 A2d at 834. There is insufficient evidence to raise a genuine question of abuse on the part of the Defendant.

For the foregoing reasons, this Court finds that Plaintiff does not have a viable defamation cause of action against Defendant. Accordingly, Defendant's motion for summary judgment is granted as to this count.

### Assault And Battery And Invasion of Privacy

Plaintiff alleges causes of action in tort for both assault and battery, and invasion of privacy based on the administration of the polygraph test. Defendant moves for summary judgment on the sole ground that Plaintiff executed a waiver and release when he voluntarily submitted to the polygraph.

The Court of Appeals for the Third Circuit considered the issue of consent to a polygraph in the employment setting in *Polsky v. Radio Shack,* 666 F.2d 824 (3d Cir.1981). In *Polsky,* the Plaintiff argued that she was required to sign the release as a condition of continued employment. The court vacated summary judgment on the consent issue and remanded the case. The Court cited the Pennsylvania legislature's passage of 18 PA.CONS.STAT. § 7321 (1983) as evidence of the recognition of the "uniquely vulnerable position" in which an employee is placed when an employer requires a polygraph examination. *Id.* at 828. The *Polsky* Court said:

> We believe that the Pennsylvania legislature did not intend to allow employers to circumvent section 7321 by requiring indirectly what they cannot require directly. Consequently, we hold that a release from liability for violation of section 7321(a) is not valid if signing of that release was required as a condition of employment or continued employment.

*Id.* at 829.

■ In the instant case, there is a genuine issue of fact as to whether Plaintiff signed the release and took the test as a condition of employment or continued employment. Defendant stresses the lack of communication between Defendant and Plaintiff on the polygraph issue. Defendant's message, that Plaintiff would be reinstated if he passed the test, was conveyed through union officials. That is not enough, however, to remove the consent issue as a matter of law from the dictates of the *Polsky* opinion. Nor does Plaintiff's change of mind with respect to his willingness to submit to the test necessarily remove the request for a polygraph from the gambit of a "condition of employment or continued employment." Given the *Polsky* decision, this Court cannot declare that the release and waiver functioned as consent to the polygraph as a matter of law.

For the reasons previously stated, this Court finds that Defendant's motion for summary judgment, on the basis of the consent issue, should be denied. Therefore, we need not reach the merits of either tort action. Accordingly summary judgment is denied on the assault and battery, and invasion of privacy counts.

For the foregoing reasons, this Court grants in part and denies in part Defendant's motion for summary judgment.

An appropriate Order shall issue.