Albert J. GAIARDO and Patricia Gaiardo, his wife, Plaintiffs,

v.

ETHYL CORPORATION, a/k/a Ethyl Corporation, Visqueen Division, Defendant.

Civ. No. 86–0818.

United States District Court, M.D. Pennsylvania.

Nov. 26, 1986.

See also, 122 F.R.D. 175.

Gene E. Goldenziel, Needle and Goldenziel, Scranton, Pa., for plaintiffs.

Joseph Lenahan, Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

KOSIK, District Judge.

On June 16, 1986 the plaintiffs, Albert J. Gaiardo [plaintiff/employee] and his wife Patricia Gaiardo, instituted this action. The complaint alleges that the defendant Ethyl Corporation [Ethyl] wrongfully terminated plaintiff Albert Gaiardo's employment. Jurisdiction of this court is invoked by diversity of citizenship pursuant to 28 U.S.C. § 1332. On September 4, 1986 the defendant filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), essentially claiming that the complaint fails to state a claim. The defendant submitted a memorandum in support of its motion on

September 15, 1986 and an appendix to said memorandum on September 17, 1986. The plaintiffs filed their brief in opposition to the motion to dismiss on October 1, 1986. A reply brief by the defendant was filed on October 14, 1986. Therefore, the defendant's motion to dismiss is ripe for disposition.

The defendant requested that in accordance with Fed.R.Civ.P. 12(b) we construe its Rule 12(b)(6) motion to dismiss as a Rule 56 motion for summary judgment[1]. Rule 12(b) provides that if a motion to dismiss for failure to state a claim is filed and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Rule 12(b) also provides that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In conjunction with its request to consider its motion as one for summary judgment the defendant has submitted the following documents: an affidavit of its plant manager, Steven K. Smith; a copy of its personnel policies; a copy of its foreman's notes on plaintiff/employee; a copy of the plaintiff/employee's termination letter; a copy of the defendant's notice of employee separation regarding the plaintiff/employee; and a copy of the Pennsylvania Human Relations Commission complaint filed by the plaintiff/employee[2]. The plaintiffs have submitted only one document entitled "affidavit," in addition to their brief[3].

The standard to be applied by this court in considering a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ. P. 12(b)(6) is clear. When a motion to dismiss is filed the court must accept the allegations in the plaintiff's complaint as true. *Hishon v. King & Spalding*, 467 U.S. 69, 74, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). Moreover, the court can dismiss a complaint pursuant to Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Id.*

In the case of *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir.1977), the court stated that if a Rule 12(b)(6) motion is converted into a Rule 56 motion the plaintiff must be afforded additional safeguards, namely "in addition to having all of plaintiff's allegations taken as true, with all favorable inferences, the trial court cannot grant summary judgment unless there is no genuine issue of material fact." In the case at bar, the court shall consider the outside matters submitted by the parties, thus converting the defendant's Rule 12(b)(6) motion to dismiss as a Rule 56 motion for summary judgment. Furthermore, the plaintiffs have the burden to present some facts from which a reasonable inference could be drawn that a contract existed in fact or should be implied by law. Therefore we shall now determine if this case presents any genuine issues of material fact.

I.

The defendant first moves to dismiss Counts I, II and III of the plaintiffs' complaint. In Counts I, II and III the plaintiffs maintain that from July, 1969 until May 1, 1985 the defendant had an implied employment contract with the plaintiff Albert Gaiardo. The plaintiffs contend that this contract arose out of the defendant's employee handbook and rules. The plaintiffs do not allege that the plaintiff/employee had a written contract with the defendant. In fact, the defendant states that the plaintiff/employee never had a written contract for employment.[4] Counts I, II and III further allege that the defendant breached the plaintiff's employment con-

---

1. *See* pages 2–4 of Doc. 14.

2. These documents are attached to Doc. 12.

3. The "affidavit" is attached to Doc. 17. It should be noted that the plaintiff Albert Gaiardo neither made nor signed this "affidavit" which purports to be his. Rather his counsel made the

"affidavit" and signed it as "attorney-in-fact" for the plaintiff Albert Gaiardo.

4. *See* affidavit of Steven K. Smith, defendant's plant manager, paragraph 6, attached to Doc. 12.

tract when it wrongfully terminated the plaintiff without just cause. The defendant argues that the plaintiff was an at-will employee who served at the pleasure of the defendant and without any specified term or period of employment. It maintains that the plaintiff had no contract of employment with it neither expressed, nor implied, nor written, nor oral.[5] The defendant further states that plaintiff was not performing satisfactorily and even if he was, good faith is not required in the termination of an at-will employment relationship.

▇ In its brief the defendant claims that under Pennsylvania Law employee handbooks which contain company policy, do not constitute an employment contract. We agree. The well settled law of Pennsylvania is that a contract for personal services is presumed terminable at will by either party absent some provision setting forth the duration of the contract. *Henry v. Pittsburgh and Lake Erie Railroad Co.,* 139 Pa. 289, 21 A. 157 (1891); *Geary v. U.S. Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). This rule, often called the "at-will presumption," was again recently recognized in Pennsylvania in the case of *Darlington v. General Electric,* 350 Pa.Super. 183, 192, 504 A.2d 306, 310 (1986), where the court stated "absent a contract, employees may be discharged at any time, for any reason, or for no reason at all." Our federal courts have also held that in the absence of an agreement for a fixed period of time, a hiring is a hiring at will. *Beidler v. W.R. Grace, Inc.,* 461 F.Supp. 1013, 1015 (E.D.Pa.1978), aff'd mem., 609 F.2d 500 (3d Cir.1979); *Ruch v. Strawbridge & Clotheir, Inc.,* 567 F.Supp. 1078, 1080 (E.D.Pa.1983). The federal courts have further ruled that in order to overcome the presumption that the contract was terminable at will, there must be specific guidelines for determining the duration of the contract. *Ruch,* supra, 567 F.Supp. at 1080; *see also Geib v. Alan Wood Steel Co.,* 419 F.Supp. 1205, 1208 (E.D.Pa.1976).

In the case at bar, the plaintiffs have not alleged any facts demonstrating a guaranteed term of employment or a basis for implying one. We have reviewed the personnel policy manual which is relied upon by the plaintiffs and has been provided to the court, as stated, as part of the evidentiary materials offered in support of the summary judgment motion.[6] There is no dispute over the existence or wording of the employee handbook. The pertinent provisions of the manual read as follows:

*Conduct*

As employees, we are subject to certain rules and regulations and are expected to maintain high standards of personal behavior. However, when regulations are broken some action must be taken for the protection of all concerned.

The seriousness of offenses varies and action in each case must be appropriate for the particular infraction. Disciplinary action at the plant takes the form of a verbal reprimand, corrective interview, a written warning, suspension or discharge. Whenever an employee feels he is being treated unfairly, he may request a review of the situation with appropriate management representatives.

Certain offenses are subject to severe disciplinary action including immediate discharge without notice.

These offenses include but are not limited to:

a. Introduction, possession or use of intoxicants or marijuana, hallucinogens, amphetamines or narcotics on Company property. Coming to work under the influence of intoxicating liquors or such drugs as prohibited.

b. Deliberate or negligent interference with production, deliberate or negligent destruction of Company property.

c. Theft or the attempt to steal while on the plant premises, obtaining material(s) on fraudulent order(s).

---

5. *See* Smith's affidavit, paragraph 6, attached to Doc. 12.

6. As stated, a copy of the defendant's personnel policies for May of 1985 in the Employee Handbook are attached to Doc. 12.

d.  The removal or attempt to remove Company property without proper authorization.

e.  Violation of a criminal law such as carrying prohibited weapons, fighting or attempting bodily injury to another, stealing, making fraudulent records, malicious mischief resulting in injury or destruction of property or conduct contrary to the morality of the community.

f.  Willful or negligent violation of safety rules.

g.  Any disclosure of Company manufacturing or trade secrets. Working for competitive firms.

h.  Intimidation or coercion of any employee because of race or creed or because of membership or non-membership in any church, society, fraternity, union, or any other labor organizations.

i.  Absence from duty without notice when notification is possible.

j.  Failure to report accidents and injuries promptly.

k.  Refusing to give testimony regarding accidents.

l.  Falsification.

m.  Sleeping while on duty.

n.  Offering or receiving money or other consideration in exchange for a better job or better work assignment.

o.  Unauthorized meetings or gatherings on Company time or on Company premises.

p.  Insubordination.

If it is not possible to make immediate disposition in a case, the employee will be required to leave the plant premises immediately and will be instructed not to report back to the plant until further notice.

In his affidavit the defendant's plant manager, Mr. Smith, avers that this manual was the only written documentation of the defendant corporation's personnel policies.[7] The plaintiffs have presented no additional evidence of employer policy or custom which is contrary to the defendant's documents concerning personnel policies. This personnel policy manual does nothing more than set forth a general code of conduct for all of defendant's employees. It does not constitute a contract of employment. Not one provision in the policy manual permits even an inference that a definite or reasonable period of employment was contemplated between the defendant corporation and the plaintiff/employee. Without a specific provision dealing with tenure of employment, either party could end the employment relationship at will. In fact the manual states that an employee may terminate his employment with the defendant at any time. The manual also provides that certain offenses committed by an employee, including insubordination, are subject to immediate discharge without notice. In the affidavit of the defendant's plant manager he states that the plaintiff/employee was discharged for insubordination.[8] Specifically, Mr. Smith states that the plaintiff continually refused to follow the defendant corporation's quality control techniques during 1984–1985.[9] The employee handbook in question clearly contains no just cause provision. Additionally none of the facts alleged by the plaintiffs establish a just cause provision. We conclude that the personnel policies which govern employee conduct and on which the plaintiffs base their breach of contract claim are insufficient to overcome the presumption that the plaintiff/employee had an at-will employment relationship with the defendant corporation.

■ However, a public policy exception to the at-will presumption exists. This exception was recognized by the *Geary* Court which stated that:

We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his

---

**7.**  *See* paragraph 1 of Steven K. Smith's affidavit attached to Doc. 12.

**8.**  *See* paragraph 14 of Smith's affidavit attached to Doc. 12.

**9.**  *See* paragraphs 9–10 of Smith's affidavit attached to Doc. 12.

employer for wrongful discharge. *Geary v. U.S. Steel Corp.*, supra, 319 A.2d at 180.[10]

In the present case, the plaintiffs assert that the plaintiff/employee was fired by the defendant for his failure to falsify quality control records.[11] Thus the plaintiffs attempt to rely upon the public policy exception which, as stated, was carved out by the Pennsylvania Supreme Court in *Geary*, supra. The defendant argues that the plaintiff was not asked to falsify quality control records and that even if he was the assurance of high quality products is not a matter of public policy.[12] We concur with the defendant.

In *Geary*, supra, the discharged employee tried to rely upon the public policy exception and claimed that he was discharged because he was acting in the best interests of the general public in opposing the marketing of a product by the defendant employer which he believed was defective. The Pennsylvania Supreme Court in disagreeing with the employee in *Geary* held that the expression of an employee's view on the quality of their employer's product does not qualify as a public policy exception. *Geary v. U.S. Steel Corp.*, supra, 319 A.2d at 178–180. The *Geary* Court stated that this was true especially since the employee's duties did not include the making of judgments in matters of product safety. *Id.* at 179. Moreover, in *Turner v. Letterkenny Federal Credit Unit*, 351 Pa.Super. 51, 55, 505 A.2d 259, 261, the court held that in order to state an exception to the at-will rule, "the employee must show a violation of a clearly mandated public policy which 'strikes at the heart of a citizen's social right, duties, and responsibilities.' " *See also Novosel v. Nationwide Insurance Company*, 721 F.2d 894, 899 (3d Cir.1983).

The facts of the case at issue are very similar to the facts of the *Geary* case.[13] Our plaintiff/employee claims that he refused to fabricate production records as to quality control of the defendant's products and that this created a "riff" in his relations with the defendant and was the reason why he was discharged.[14] In this case, the product with which the plaintiff was involved in manufacturing was a plastic sheet that was used to line disposable diapers for infants.[15] Furthermore, according to the defendant and the plant manager's affidavit the plaintiff was neither employed in a supervisory capacity nor was he responsible for quality control of the plastic diaper liner during the relevant time periods of his employment with the defendant.[16] The plaintiffs have not presented any additional evidence to controvert this claim. Finally, we agree with the defendant that even if the plastic liner's quality was substandard that at worse leaking and splitting of the diaper was the only risk. We do not feel that such conduct constitutes a violation of a clearly mandated public policy as contemplated by *Geary*, supra, and *Novosel*, supra. Since the link to a clearly mandated public policy is tenuous at best in this case, the plaintiffs have no right of action for breach of contract against the defendant.

## II.

In Count IV of the complaint, the plaintiffs allege that the termination of plain-

---

10. The public policy exception to the employment at-will doctrine was also recently recognized by the Pennsylvania Superior Court in the case of *Richardson v. Charles Cole Memorial Hospital*, 320 Pa.Super. 106, 466 A.2d 1084 (1983). The *Richardson* Court stated that: Under Pennsylvania law, where no clear mandate of public policy has been violated, an employee at will has no right of action against his employer for wrongful discharge. [Citation omitted]. *Id.* 320 Pa.Super. at 107, 466 A.2d at 1085. *See also Rossi v. Pennsylvania State University*, 340 Pa.Super. 39, 489 A.2d 828 (1985).

11. *See* paragraphs 32–34 of the complaint, Doc. 1 and page 14 of plaintiffs' brief, Doc. 17.

12. *See* Part IV, page 4 of defendant's brief, Doc. 14.

13. We disagree with the plaintiffs who in their brief state that the facts of *Geary* bear no similarity to the instant case's facts. *See* page 15 of Doc. 17.

14. *See* paragraph 33 of the complaint, Doc. 1.

15. *See* Part IV of defendant's brief, Doc. 14.

16. *See* paragraph 7 of Smith's affidavit, attached to Doc. 12.

tiff/employee by the defendant violated the public policy of Pennsylvania because it is against public policy for an employee to fabricate quality control records. As we have stated above, the discharge of the plaintiff/employee in this case does not fall within what has been viewed in Pennsylvania as a clearly mandated public policy.

## III.

Count V of the complaint alleges that the defendant corporation defamed the plaintiff/employee. The plaintiff contends that the defendant accused him both orally and in writing of insubordination, failure to do his job and poor attitude. The plaintiff claims that these accusations were publicized to his colleagues and to his community.[17] The defendant argues that the statements made concerning the plaintiff's discharge were entitled to a conditional privilege and that they were not made public. The defendant also contends that the plaintiffs defamation action is time barred by the statute of limitations. We need not address the defendant's statute of limitation argument for we find that its other contentions are dispositive.

■ First, this Court finds that the discharge notice defendant corporation gave to the plaintiff employee[18] was not defamatory since the law of Pennsylvania is well settled that there is an absolute privilege for such discharge notice. *DeLuca v. Reader*, 227 Pa.Super. 392, 399–400, 323 A.2d 309, 313 (1974); `Smith v. Greyhound Lines, Inc.*, 614 F.Supp. 558, 561 (W.D.Pa. 1984).

■ Second, we find that the statements made by the defendant accusing the plaintiff/employee of insubordination were conditionally privileged. One who allegedly publishes a defamatory matter is not liable if it is published on a conditionally privileged occasion. *Harbridge v. Greyhound Lines, Inc.*, 294 F.Supp. 1059, 1065 (E.D.Pa.1969); *Smith v. Greyhound Lines, Inc*, supra, 614 F.Supp. at 562. An occa-

sion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know. *Harbridge v. Greyhound Lines Inc.*, supra, 294 F.Supp. at 1065; *Smith v. Greyhound Lines Inc.*, supra, 614 F.Supp. at 562.

■ In this case, the defendant states that the reasons for the plaintiff/employee's termination were explained solely to the management level personnel and privately to three production operators on the plaintiff's crew, and were explained at an unemployment compensation hearing. The defendant further states that the reasons for the plaintiff's dismissal were not publicized to the general public.[19] The plaintiffs offer no evidence to controvert these facts. We feel that all statements made by the defendant concerning the reasons for the plaintiff's discharge were made only to those employees with a legitimate interest in the matter and thus were conditionally privileged.

■ The conditional privilege can however be lost if the defendant is motivated solely by spite or ill-will to the plaintiff instead of the protection of the legitimate common interest. *Campbell v. Willmark Service System, Inc.*, 123 F.2d 204, 206–207 (3d Cir.1941); *Smith v. Greyhound Lines, Inc.*, supra, 614 F.Supp. at 562. Moreover, if the statements are false and the defendant acts in reckless disregard as to whether they are false, then the privilege can also be lost. *Berg v. Consolidated Freightways, Inc.*, 280 Pa.Super. 495, 501, 421 A.2d 831, 834 (1980), petition for allowance of appeal denied (1981). In the case at bar, the plaintiffs allege that the defendant intentionally and maliciously defamed the plaintiff/employee in order to tarnish the plaintiff's good name and reputation. However, beyond these bare allegations and in light of the documents sub-

---

17. *See* paragraph 40 of the complaint, Doc. 1.

18. *See* Doc. 12 for a copy of the discharge notice.

19. *See* Smith's affidavit, paragraph 13 attached to Doc. 12.

mitted by the defendant, there is no evidence that the defendant was motivated by any desire other than protecting the work place. Therefore, we hold that the defendant's conditional privilege was not lost.

### IV.

In Count VI of the complaint the plaintiff claims that the defendant intentionally inflicted emotional distress upon him by terminating his employment. The defendant contends that the plaintiffs' complaint does not allege the necessary extreme and outrageous conduct required to make out such cause of action.

The Court of Appeals for the Third Circuit has determined that, under Pennsylvania law, there are four [4] elements which comprise the tort of intentional infliction of emotional distress:

[1] extreme and outrageous conduct;

[2] intention or recklessness;

[3] emotional distress in the victim caused by the conduct; and

[4] distress that is severe.

*Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979); *See also* Restatement (Second) of Torts, § 46(1), at 71 (1965).

Instructive in the present case is the case of *Brieck v. Harbison–Walker Refractories*, 624 F.Supp. 363 (W.D.Pa.1985). In *Brieck*, the court found that where the defendant employer claimed that it laid off the plaintiff/employee because of poor sales and the plaintiff alleged age discrimination, the defendant's conduct did not meet the test of extremeness required by the tort of intentional infliction of emotional distress. The *Brieck* Court stated that "[w]hile the loss of employment is unfortunate and unquestionably causes hardships, often severe, we must acknowledge that it is a common event." *Id.* at 367. Other cases have also denied loss of employment as a basis for this tort.

In *Cautilli v. GAF Corp.*, 531 F.Supp. 71 (E.D.Pa.1982), the court held that where the plaintiff/employee alleged that the defendant employer induced him to continue to work for it when it knew that a change

in circumstances might require him to move his residence and relocate failed to state a claim for intentional infliction of emotional distress. The *Cautilli* Court stated that the defendant's alleged conduct in the employment contract dispute was not the kind of extreme and outrageous conduct which supported a claim for intentional infliction of emotional distress. *Id.* at 74. In *Hooten v. Pennsylvania College of Optometry*, 601 F.Supp. 1151 (E.D.Pa. 1984), the court likewise found that an alleged breach of an employment contract did not give rise to a cause of action for the tort of intentional infliction of emotional distress.

Moreover, it is for the court to determine whether the conduct of which a plaintiff complains is sufficiently extreme and outrageous as to permit recovery for the intentional infliction of emotional distress. *Cautilli v. GAF Corp.*, supra, 531 F.Supp. at 74; *Kutner v. Eastern Airlines, Inc.*, 514 F.Supp. 553, 557 (E.D.Pa.1981). Accordingly, we agree with the defendant and conclude that the plaintiffs have not established that defendant's conduct meets the test of extremeness required to establish a cause of action for intentional infliction of emotional distress.

### V.

Count VII of the complaint alleges that the defendant breached its duty to exercise reasonable care and diligence in terminating the plaintiff/employee's employment. In essence, plaintiffs are trying to establish a cause of action for negligent termination of employment. The defendant claims that it had no duty to exercise reasonable care in terminating the plaintiff's employment since the plaintiff was an employee at-will. We agree with the defendant.

As we have previously discussed, the plaintiff/employee in this case was an employee at-will. He had no contract with the defendant for employment. Therefore, the defendant owed no duty to use reasonable care in terminating the plaintiff's employment. Moreover, the defendant claims that there is no tort cause of action for negli-

gent termination of employment. The plaintiffs do not cite any cases which support such a theory of recovery and we have found none.

Finally, Count VIII of the complaint is brought by plaintiff Patricia Gaiardo for loss of consortium. This claim on behalf of Mrs. Gaiardo relies on Mr. Gaiardo's ability to state a claim on which relief can be granted. Since we have held that Mr. Gaiardo's claims have failed, his wife's claim for loss of consortium must also fail. *See Murray v. Commercial Union Insurance Co., et al.,* 782 F.2d 432, 437–38 (3d Cir.1986).

Based upon the foregoing, we do not find any genuine issues of material facts in dispute in this case. Accordingly, we shall grant summary judgment in favor of the defendant and against the plaintiffs.

An appropriate Order will issue.