Eugene F. BRIECK and
Dolores F. Brieck

v.

HARBISON–WALKER REFRACTO-
RIES, A DIVISION OF
DRESSER INDUSTRIES.

Civ. A. No. 84–1594.

United States District Court,
W.D. Pennsylvania.

Dec. 19, 1985.

James H. Logan, Pittsburgh, Pa., for plaintiffs.

James H. Hollihan, Manion McDonough & Lucas, Pittsburgh, Pa., for defendant.

## OPINION

### GERALD J. WEBER, District Judge.

Plaintiffs bring this action against Mr. Brieck's former employer alleging age discrimination, breach of contract, intentional infliction of emotional distress as to Mr. Brieck, and negligent infliction of emotional distress as to Mrs. Brieck. We have before us defendant's motion for summary judgment, accompanied by affidavits and excerpts from depositions, and plaintiffs' response similarly supported. In reviewing these materials we find no dispute as to relevant facts. We must now decide whether these facts adequately support the causes of action pleaded.

### FACTUAL BACKGROUND

Defendant sells and installs refractory brick and related materials to producers of steel, glass and paper. Sixty percent of its market lies with the steel industry, however, and defendant asserts that its own financial success is closely linked to the fortunes of domestic steelmakers. Defendant has stated that, between 1979 and 1982, sales of refractory materials fell from $425,000,000 to $302,000,000 and profits in the same period dropped from $64,000,000 to a loss of $20,000,000.

Defendant hired Mr. Brieck in June 1965 as an installation specialist. His primary duties consisted of supervising installation of refractory materials in steel making furnaces, training the customer's employees in operation and maintenance, and troubleshooting to resolve any complaints. Brieck was one of four installation specialists attached to the Iron and Steel Marketing Support Group. The others were W.E. Meixell, A.G. Malarich, and H.J. Faust.

As a result of poor sales in early 1982, management decided to cut expenses by laying off workers. Mr. Brieck was one of six workers in the Iron and Steel Marking Support Group to be laid off in early July 1982. Of these six, two were installation specialists: Brieck, age 55, and Meixell,

age 59. In late July 1982, Malarich, then age 59, also was laid off. In mid-November 1982, Faust then age 39, the last remaining installation specialist, also was laid off. Faust was the only installation specialist to be recalled, in July 1983. Mr. Brieck argues that his layoff and Faust's recall constitutes age discrimination.

Mr. Brieck also argues that defendant has breached an implied contract of employment in laying him off. Brieck apparently relies on four statements from management as establishing his implied contract. First, Brieck stated in his deposition that Larry Sheatsley, one of his supervisors, told him in August 1980 and February 1982 not to worry about being laid off. Plaintiffs' Supplemental Brief, Docket Entry No. 20, Appendix at 20 and 21. Second, in the Spring 1982 edition of a company newsletter a vice-president of human resources stated that:

> Layoffs are implemented only after an extensive review of alternatives. Obviously, layoffs, when they are necessary, occur in departments or operating units most affected by the business decline. Length of company service and skill requirements necessary to carry out the reduced business activities are the most important considerations. We try to do what is right and fair.

*Id.* at 26–27.

Finally, Brieck received a note from Donald Jamison, another supervisor, commending him and stating that, "We hope that we can continue to reward you for your fine work." *Id.* at 38.

Plaintiffs made no arguments in their briefs regarding their claims for tortious infliction of emotional distress. We will address all counts in the complaint in turn.

### AGE DISCRIMINATION

As we stated in *Pierce v. New Process Company,* 580 F.Supp. 1543 (W.D.Pa. 1984), *aff'd.* 749 F.2d 27 (3d Cir.1985), the plaintiff in an age discrimination action must establish four elements to make out a prima facie case. This accomplished, he is entitled to a rebuttable presumption of dis-

crimination. Plaintiff must show that he (1) is in the protected age group; (2) was the subject of an adverse employment action; (3) was qualified for the position in question; and (4) was treated less favorably than younger employees. In short, plaintiff must prove that age was "a determinative factor" in an adverse decision concerning his employment. *Duffy v. Wheeling-Pittsburgh Steel Corp.*, 738 F.2d 1393, 1394 (3d Cir.1984).

■ If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for not hiring or for discharging the plaintiff. But this is a burden of production, not persuasion. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (fn. omitted).

■ If the defendant proffers a legitimate reason for its actions, the plaintiff resumes his burden of persuasion. To succeed, he either must prove that unlawful discrimination more likely motivated the defendant or that defendant's explanation is merely a pretext. *Id.* at 256, 101 S.Ct. at 1095; *Duffy, supra; Molthan v. Temple University*, 778 F.2d 955 (3rd Cir.1985). Where there is a reduction in force rather than a discharge or failure to hire, the plaintiff's burden obviously is modified. In such cases, the plaintiff simply must show that younger employees working in similar jobs were retained. *Duffy*, 738 F.2d at 1395,

notes 2 and 3. This modification is not material here, however, since it is uncontested that defendant recalled Hugh Faust, a younger employee, in July 1983 to work as its only installation specialist in the Iron and Steel Marketing Support Group.[1]

## PRIMA FACIE CASE

■ The burden of making out a prima facie case is not onerous, and we find that plaintiff has done so. He was 55 years old when he was laid off. He certainly was qualified to work as an installation specialist, the job now held by Faust, a younger employee.

Defendant responds with its explanation of bona fide business reasons behind its action. Of the four installation specialists, Meixell, Brieck, Malarich and Faust, Meixell was the oldest at 59, but had only two years of seniority at the time of his layoff in July 1982. Brieck was laid off at the same time. Malarich is four years older than Mr. Brieck, so his layoff is not consequential. Faust's employment until November 1982 and recall in 1983, as characterized by plaintiff, is the offensive act.

While Faust is 16 years younger than Mr. Brieck, Brieck has only a year more seniority. In performance evaluations, Faust was rated slightly higher.[2] But the chief reason for retaining Faust, according to defendant, was his prior experience as a sales correspondent. He thus was practiced in working with records and written reports, in customer relations, and in preparing bids and quotations.

Plaintiffs attempt to expose these alleged justifications as pretext by coloring

1. Brieck has shown no evidence that he was qualified to assume the responsibilities of any other job.

2. The following chart summarizes key statistics involved in this case:

|  | Age in June 1982 | Date Hired | Performance Evaluations (5 represents highest grade) | | | |
|---|---|---|---|---|---|---|
|  |  |  | 1978 | 1979 | 1980 | 1981 |
| FAUST | 39 | Sept. 1966 | 4 | 3 | 3 | 3 |
| BRIECK | 55 | June 1965 | 3 | 2 | 2 | 3 |

Faust's prior experience as unimportant. In his deposition, Brieck referred to Faust's former position as being that of an "office boy" and a "gofer", that is, an employee whose duties include running errands. Plaintiff's Supplemental Response in opposition, Appendix at 12 and 13. Indeed, Faust testified at his own deposition to being an office handyman when he was a staff correspondent. *Id.* at 47. But these were not and are not his principal duties, *Id.* at 42, and Brieck does not refute Faust's prior experience with office matters such as price quotations, customer contact, and setting priorities for orders from the manufacturing plant.

Mr. Brieck further attempts to downplay Faust's experience by pointing out that his knowledge of office matters actually is of no consequence to defendant since Faust spends about three-fourths of his time on installation work. Any question about the appropriateness of how Faust now spends his time edges into the area of judicial scrutiny of business decisions, which is not part of our function. We nonetheless consider it plausible that the importance of an employee's related experience, whether or not frequently applied, increases under the scaled-down business operations which in fact existed. Without considering age, we find that Mr. Brieck, in comparison to Faust, has

1. slightly more seniority;
2. slightly poorer performance evaluations;
3. little experience in areas related to installation specialist.

We thus cannot find that age was a determinative factor in the decision to lay off Mr. Brieck.

Other facts support this finding. Prior to the June 1982 layoffs, the Iron and Steel Marketing Support Group employed 32 people, 14 of whom were above the age of 40. Of the 11 employees who subsequently were laid off, only three were more than 40 years of age. Even considering the employees who were recalled, the average age of the group was .04 of a point higher after layoffs than before. Affidavit of William Sekeras, Docket Entry No. 17, Exhibits D and E. Of course, these statistics are not themselves conclusive, but they further highlight Mr. Brieck's absence of proof that defendant's justification for his layoff is a pretext for age discrimination.

## BREACH OF CONTRACT

■ On this claim plaintiff concedes that there is no distinct common law cause of action for breach of contract resulting from age discrimination; remedies for age discrimination must be sought under state and federal statutes enacted to address the problem. *Bonham v. Dresser Industries, Inc.* 569 F.2d 187 (3d Cir.1977). Citing *DeRamo v. Consolidated Rail Corporation,* 607 F.Supp. 100 (E.D.Pa.1985), he urges that his breach of contract claim nevertheless should be considered because it is not grounded on age discrimination. Rather, without raising the issue of age discrimination, he asserts that the act of laying him off violated the terms of an implied contract of employment. We believe that this question of contract rights adequately describes a cause of action separate from the statutory claim of age discrimination and the related tort theory of wrongful discharge for age discrimination. Plaintiffs' pleadings present a claim for breach of contract without reference to age which could support a separate recovery.

Plaintiffs' adequate pleading of their contract claim, however, does not include sufficient evidence to protect them from summary judgment. As stated above, Mr. Brieck was told in August 1980 and February 1982 by Larry Sheatsley, one of his supervisors, that he should not worry about being laid off. In spring of 1982 a Dresser vice-president stated in the company news letter, that in deciding on layoffs, "Length of company service and skill requirements necessary to carry out the reduced business activities are the most important considerations." Finally, a note from Brieck's immediate supervisor informing him of a merit raise stated that, "we [Dresser] hope we can continue to reward you for your fine work." See pp. 364 and 365 supra. Viewing defendant's state-

ments most favorably to plaintiffs, they do not establish the violation of a contract.

The general rule in Pennsylvania has long been that contract for personal services are presumed terminable at will by either party absent some provision setting the duration of the contract. *Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289, 21 A. 157 (1891); *Cummings v. Kelling Nut Co.*, 368 Pa. 448, 84 A.2d 323 (1951); *Jackman v. Military Publications, Inc.*, 350 F.2d 383, (3d Cir.1965). Plaintiff may overcome this presumption by showing that the parties did agree to a contract of definite duration or by "evidence showing that the plaintiff-employee gave the defendant-employer consideration in addition to the employee's normal services." *Bravman v. Bassett Furniture Industries, Inc.* 552 F.2d 90, 92 (3d Cir.1977) (footnote omitted); *See also McNulty v. Borden, Inc.*, 474 F.Supp. 1111 (E.D.Pa. 1979). In the latter instance, the contract is deemed to be for a reasonable time.

Mr. Brieck relies on no express written or oral agreement; his evidence concerning a contract for employment rests solely in the statements above. We find this evidence insufficient to satisfy the requirement for a provision setting the length of the contract. The statements lack any reference to any future point. In *Geib v. Alan Wood Steel Co.* 419 F.Supp. 1205 (E.D.Pa.1976), plaintiff was granted a contract "until retirement." In *Lightcap v. Keaggy*, 128 Pa.Super. 348, 194 A. 347 (1937), the contract was extended for the period "so long as you live". Neither statement was found sufficient to support a cause of action. The statements on which plaintiffs rely are considerably more ambiguous. Mr. Brieck thus has not established the form of a contract which supports his claim. *Adams v. Budd Co.*, 583 F.Supp. 711 (E.D.Pa.1984).

## TORTIOUS INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs make no argument regarding their claims of intentional and negligent infliction of emotional distress in either of their briefs opposing defendant's motion for summary judgment, raising the likelihood that the claims have been abandoned. In any event, we find that defendant's conduct in no way rises to the level of outrageousness necessary to invoke these theories.

The Court of Appeals for the Third Circuit has determined that, under Pennsylvania law, the intentional branch of this tort is composed of four elements:

(1) extreme and outrageous conduct;

(2) intention or recklessness;

(3) emotional distress in the victim caused by the conduct; and

(4) distress that is severe.

*Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979); Restatement (2d) of Torts, § 46(1) (1965). The extremeness of behavior associated with this tort necessarily means that it rarely will be found. One example is *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970), in which the parents of a dead child recovered from an automobile driver who caused the child's death, when the driver concealed the child's body for two months. Another is *Chuy, supra*, in which a football team's physician reported to the press that a player suffered from a potentially fatal blood disease, knowing this diagnosis was unsupported. While loss of employment is unfortunate and unquestionably causes hardships, often severe, we must acknowledge that it is a common event. It has been denied as a basis for this tort. *Cautilli v. GAF Corporation*, 531 F.Supp. 71, (E.D.Pa.1982). Without belaboring the point, we conclude that the plaintiff clearly has not shown that defendant's conduct meets the test of extremeness required by this theory. Our finding necessarily precludes Mrs. Brieck's claim of negligent infliction of emotional distress based on defendant's same actions.

## ORDER

Defendant's Motion for Summary Judgment is GRANTED, and the case is DISMISSED.