**PEARS**

**v.**

**SPANG.**

**McKRUIT, Jr.**

**v.**

**SPANG.**

**WALSH**

**v.**

**SPANG.**

**GIBSON**

**v.**

**SPANG.**

**Civ. A. Nos. 87–415 to 87–417, and Civ. A. No. 87–2557.**

United States District Court, W.D. Pennsylvania.

Aug. 7, 1989.

Alexander Lindsay, Jr., Lindsay & Lutz, P.C., Butler, Pa., for Pears, McKruit, Jr. and Walsh.

Matthew Hoffman, Pittsburgh, Pa., for Gibson.

James Hollihan, Manion McDonough & Lucas, P.C., Pittsburgh, Pa., William Marsh, Spang & Co., Butler, Pa., for Spang.

## OPINION

GERALD J. WEBER, District Judge.

These four related age discrimination cases were consolidated for discovery because they all arose from the same reduction in force. Defendant has now filed a

motion for summary judgment with supporting brief and evidentiary material in each case, and plaintiffs have responded. Although each case requires analysis on its own particular facts, and two cases present unique legal issues, certain basic facts and arguments are common to all four cases and so we address them in one Opinion.

## FACTS

Spang & Co. is a manufacturing concern headquartered in Butler, Pennsylvania. One division manufactured oil drilling equipment and from 1982 to 1985 this division showed increasing losses. From 1982 to 1984 these losses were fortunately offset by profits from other divisions, but in 1985 all Spang's divisions experienced a business downturn. In this Opinion we will spare the reader the detail of financial data and history provided by defendant in its brief.

As a result of diminishing business, Spang decided in 1985 to close one plant and to effect a reduction in its salaried workforce. Company officials were instructed to conduct a review of all salaried employees throughout the Company to determine which employees were to be retained and which were to be dismissed. On August 30, 1985, Spang placed various salaried employees on indefinite layoff. Ninety days later, on November 30, 1985, layoff was converted to termination. Each of the four plaintiffs was included in this reduction in force, including the August 30, 1985 layoffs and the November 30, 1985 terminations.

### A. *Merle Pears (C.A. No. 87–415)*

Merle Pears was a foreman of the Shipping and Receiving Department of the Magnetics Plant in East Butler, Pennsylvania. At the time of the August 30, 1985 layoff, Pears was 49 years old, and was replaced by a 39 year old foreman transferred out of the Closed Drill Pipe Plant. Plaintiff clearly establishes a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Just as clearly, defendant articulates a legitimate non-discriminatory reason for plaintiff's dismissal—a reduction in force and retention of allegedly better qualified or better performing employees. It is thus up to the plaintiff to establish discriminatory intent through direct evidence, or circumstantially by proving that defendant's asserted business reason was pretextual. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In this case, defendant contends that plaintiff is unable to raise a material issue of fact for resolution by a jury. Specifically, defendant contends that plaintiff is unable to produce any evidence to counter defendant's asserted business reason other the the plaintiff's own subjective disagreement with the decision.

Defendant relies heavily on *Healy v. New York Life Insurance Co.*, 860 F.2d 1209 (3rd Cir.1988) which allegedly revives the use of summary judgment in age discrimination claims in this Circuit. Although we believe that *Healy* demonstrates that summary disposition is still available in the appropriate case, it does not by itself reverse this Circuit's trend in the opposite direction, a trend which we have been most acutely aware of. *See, Graham v. F.B. Leopold Co., Inc.*, 602 F.Supp. 1423 (W.D. Pa.1985), rev'd 779 F.2d 170 (3rd Cir.1985); *Sorba v. Pennsylvania Drilling Co., Inc.*, 648 F.Supp. 292 (W.D.Pa.1986), rev'd 821 F.2d 200 (3rd Cir.1987); *Brieck v. Harbison Walker Refractories*, 624 F.Supp. 363 and 705 F.Supp. 269 (W.D.Pa.1986), rev'd in part 822 F.2d 52 (3rd Cir.1987), cert. granted, —— U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 420 (1988), cert. dismissed as improvidently granted, —— U.S. ——, 109 S.Ct. 546, 102 L.Ed.2d 512 (1989). But *see, Pierce v. New Process Corp.*, 580 F.Supp. 1543 (W.D.Pa.1984); *Hanslovan v. Pennsylvania Mines Corp.*, 603 F.Supp. 464 (W.D.Pa.1985), aff'd in pertinent part 791 F.2d 917, 918 (1986).

*Healy* is easily distinguishable from the present case on its facts. Healy was an upper level management employee. Pears was a shipping and receiving foreman. Healy's employer recited specific shortcomings, and poor performance on a particular project. Pears' employer does not. Hea-

ly's replacement was clearly superior on certain relevant criteria. The relative merit of Pears' replacement is not clear, and Company officials claim not to have compared the qualifications of the two men. Healy would have had to undertake expanded responsibility which he was not suited for. Pears was to perform the same job. Objections to Healy were consistent with prior performance evaluations. Pears had always received highly favorable reviews.

Other relevant facts aid plaintiff here. Pears' immediate supervisor was not consulted in the review process and expressed surprise at the decision on Pears. According to Pears, at his termination interview a Company official tried to dissuade plaintiff from seeking an attorney. Finally, one Company official admits that the Company did not consider recalling Pears from layoff because he had filed a discrimination claim.

In addition we note that the entire matter rests on the credibility of the plaintiff and the Company's witnesses. Credibility is for a factfinder at trial and is not susceptible to summary disposition.

Defendant has also advanced statistical evidence to support its position, and plaintiff has submitted evidence of past age discrimination by Company officials in an effort to avoid summary judgment. Because of our decision above, we need not consider this evidence in resolving the present motion, and a decision on the admissibility of such evidence will be made at trial. In fact, trial briefs on these two points may be in order.

For the reasons stated, we conclude that summary judgment is inappropriate in C.A. No. 87–415, and defendant's motion will therefore be denied.

### B. *McKruit (C.A. No. 87–416)*

◼ Stanley McKruit, Jr. was a foreman in the Powder Core Department of the Magnetics Division Plant in East Butler, Pennsylvania. McKruit was born November 22, 1945, placing him in a unique factual position which prompts one prong of defendant's motion for summary judgment.

At the time of the August 30, 1985 layoff, McKruit had not yet reached age 40. However, plaintiff celebrated his 40th birthday only eight days prior to termination on November 30, 1985. McKruit was replaced by a 31 year old foreman.

Defendant argues that McKruit is not a member of the protected class because he was not yet 40 years old when he was included in the reduction in force. Although plaintiff reached 40 by the time he was formally terminated, the decision to include him in the reduction in force had allegedly been made long before.

Plaintiff admits that he does not challenge the layoff because he was not yet a member of the protected class, but he argues that the layoff was not a final decision, that he was informed that the Company would re-evaluate in the intervening 90 days, and some persons laid off were in fact recalled rather than terminated. Plaintiff claims that the decision not to recall him but to include him in the termination was discriminatory on the basis of age.

Although it is a close and unique questions,[1] we think that summary judgment is inappropriate in these circumstances. Plaintiff's cause became certain when the Company's decision became final. The fact that defendant had first included plaintiff in the layoff some months earlier is not determinative. Defendant admits that it held out some hope of recall for those on layoff and in fact at least two persons were recalled to work, saving them from termination.

Until termination was actually effected, the Company at least had the option of recalling plaintiff but chose not to exercise that option. Actual termination occurred on November 30, 1985, after plaintiff had reached age 40. At the time of the discharge, McKruit was undeniably within the protected class.

This result also provides some measure of certainty and ease of operation under the statute. We need not concern ourselves with the true nature of the layoff, or

---

1. Our research reveals no other reported decision with this factual situation.

when a personnel decision was actually made. We need only look to the actual date of discharge.

Although plaintiff cannot and does not challenge the *layoff* because he was not in the protected class *at that time*, it does not mean that plaintiff must admit that defendant's reasons for the layoff were legitimate. Presumably the considerations that caused defendant to place McKruit on layoff were the same considerations that caused defendant to ultimately terminate plaintiff. Plaintiff now bears the burden of proving that those reasons were pretextual.

Defendant also seeks to defeat McKruit's claim on the same grounds that it attacked Pears' claim, relying on *Healy*. On the present record we do not believe summary judgment is warranted on this point for the same reasons stated above in consideration of the motion concerning Pears.

For the reasons stated, defendant's motion for summary judgment in C.A. No. 87–416 will be denied.

### C. *Jacqueline Walsh (C.A. No. 87–417)*

Jacqueline Walsh was employed by Spang as a secretary to the Corporate Engineering Department at the Company's Butler headquarters. At the time of the August 30, 1985 layoff, Walsh was 58 years of age. Other younger secretaries were retained.

Within days of the November 30, 1985 terminations, each terminated employee went through an individual exit interview with the Company's personnel office. At that interview, each employee was offered a special severance benefit in return for a release of any claims against the Company. This offer was made to Ms. Walsh, and she took the forms home and discussed them with her husband. Several days later she returned to Spang's offices, signed the release and accepted a special severance payment of $2,040 representing two months' pay.

■ Defendant now raises the release as a bar to plaintiff's claim. Waiver of an ADEA claim is enforceable, but only after careful evaluation of certain relevant factors to determine whether the employee's waiver was "knowing and willful." *Cirillo v. ARCO Chemical Co.*, 862 F.2d 448 (3rd Cir.1988); *Coventry v. United States Steel Corp.*, 856 F.2d 514 (3rd Cir. 1988). The relevant factors are 7 in number:

(1) The clarity and specificity of the release language;

(2) The plaintiff's education and business experience;

(3) The amount of time plaintiff had for deliberation about the release before signing it;

(4) Whether plaintiff knew or should have known his rights upon execution of the release;

(5) Whether plaintiff was encouraged to seek, or in fact received the benefit of counsel;

(6) Whether there was an opportunity for negotiation of the terms of the agreement; and

(7) Whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

Consideration of these factors, and comparison with the factual circumstances in *Coventry* and *Cirillo*, compels the conclusion that Walsh understood the release and knowingly waived her rights to any claim of age discrimination.

■ The terms of the release are quite clear, with mysterious legal incantations held to a minimum:

"I have read the above explanation and I understand it. I accept the offer of a special termination payment. In consideration of receiving this payment and the benefits listed on the reverse side of this form, I do hereby voluntarily release and forever discharge Spang & Company and its directors, officers and employees from any and all liability and claims which I or my beneficiaries or heirs may have, now or in the future, including any claims under any federal, state or local civil rights law or under the Age Discrimination in Employment Act of 1967, as amended. I acknowledge that I may

be waiving statutory and common law rights."

Significantly, the release specifically refers to ADEA claims.

As for education and experience, it is undisputed that plaintiff graduated from high school, attended a one-year secretarial course at Boston University in 1946, and then raised a family. After 20 years as a housewife, she took courses to brush up on her secretarial skills and re-entered the job market. She joined Spang in 1974 and worked as a typist in the engineering office. It is also significant to note that plaintiff's husband, who conferred with plaintiff about the release, attended college for several years and has been employed for many years in a responsible position with a bank.

Plaintiff's counsel denigrates his client's education and experience in an attempt to avoid the effect of the release. Nonetheless, the undisputed evidence recited above identifies Mr. & Mrs. Walsh as persons of at least ordinary intelligence.

It is also clear from the undisputed facts of record that plaintiff had ample time for deliberation about the release before signing it. Indeed, the Company imposed no time limit on the special severance offer or the release. When presented with the offer and release at her exit interview, plaintiff asked for the opportunity to take it home and think about it, and the Company did not object. Plaintiff admitted discussing the matter with her husband and they took several days to reflect on it. Although she signed the release within several days of receiving it, she was under no compulsion to do it quickly. The Company imposed no time limit and no one from the Company called or wrote to urge a quick decision.

The fourth enumerated factor is whether plaintiff knew or should have known of her rights before signing the release. In this regard, the very structure of defendant's reduction in force gave plaintiff evidence of a potential claim under the ADEA. Soon after the August 30, 1985 layoff, plaintiff became aware that much younger secretaries had been retained and were performing her duties. Thus plaintiff had several months to consider and explore this matter *before* the release was ever proposed.

Plaintiff complains that it was only some three or four months after signing the release that she learned that Spang was hiring new, younger secretaries, after terminating her in an alleged cost-cutting move. We understand that this raised plaintiff's feelings of ire and indignation and may have heightened in her mind the possibility of age discrimination, but it does not alter the fact that plaintiff had sufficient knowledge at a very early stage to suggest the likelihood of a claim.

While plaintiff did not seek counsel prior to signing the release, it is not denied that the release itself states that the employee has the right to consult legal counsel before signing. Although defendant did not actively encourage plaintiff to seek counsel, it did explicitly state this as an option.

The sixth criterion asks whether there was an opportunity for negotiation of the terms of the agreement. In this case, plaintiff never sought to negotiate nor did she express any desire to. Thus there is no evidence either way on this point and it is a neutral factor.

Finally, we must consider whether the consideration provided is greater than the benefits the employee was otherwise entitled to by contract or law. Plaintiff seeks to compare the severance benefit to the value of her job and her pension if she were to continue in employment, but we do not believe this is the appropriate comparison. The special severance offered by the Company was not required by law or contract and was not offered in lieu of other employee benefits. It was above and beyond what plaintiff was due upon termination and therefore was valuable consideration.

Our review of the seven factors, based on undisputed facts of record, reveals overwhelming support for the conclusion that plaintiff's waiver of her rights under the ADEA was knowing and willful.

Plaintiff seeks to counter this conclusion in her deposition by quibbling about the

meaning of specific words or terms in the release and claiming ignorance:

"Q. OK. And I gather from that that you understood the sentence to mean that if you signed it, you wouldn't be able to sue them. Is that right?

A. No.

Q. Then how could they be trying to save a lawsuit?

A. Well, because of the working. This is a shrewd piece of paper.

Q. OK. What working are you referring to, the words 'voluntarily release and forever discharge'? What did you understand those words to mean?

A. Nothing.

Q. You didn't understand them or you understood—

A. It doesn't mean anything.

Q. Do you know what the words 'voluntarily release' means?

A. Yes.

Q. What does that mean?

A. Voluntarily release.

Q. Do you understand what 'forever discharge' means?

A. Forever and ever.

Q. How about the word 'discharge'?

A. I don't know what that means.

Q. OK. What did you understand the word 'release' to mean in that sentence? Didn't you understand that to mean giving up something? Giving up claims? Wasn't that your understanding?

A. No. ...

Q. Do you understand what it means when you release a claim, letting go of a claim?

A. I don't know what you mean."

Despite such claims of a severely limited vocabulary, plaintiff admits that she understood that the release was intended to save a lawsuit for the Company, and her husband admitted that he understood that by releasing a claim a person gives up his or her rights to that claim. In light of such admissions, plaintiff's quibbling about simple everyday language rings quite hollow and will not avoid summary judgment.

In comparison to *Cirillo* and *Coventry*, we think this case falls somewhere between the two. This case does not present the Hobson's choice confronted by the plaintiff in *Coventry*, forced to choose between an ADEA claim and his pension. On the other hand, this case does not include the sensitively crafted release and the month-long reflection found in *Cirillo*. Nonetheless we believe that the undisputed evidence of record demonstrates overwhelmingly that plaintiff's waiver of her ADEA claim was knowing and willful. The release is therefore enforceable and summary judgment in favor of defendant will be granted in C.A. No. 87–417.

Because of our holding on this point we need not consider the other arguments raised in defendant's motion for summary judgment in this case.

D. *William Gibson (C.A. No. 87–2557)*

 William Gibson was manager of staff services in the Drill Pipe Plant at East Butler, Pennsylvania. In this position, Gibson had experience in purchasing, sales and personnel matters. At the time of the August 30, 1985 layoff, which included the closing of the Drill Pipe Plant, Gibson was 49 years old. Gibson actively sought reassignment to various positions within the Company based on his varied experience but to no avail. He was terminated November 30, 1985.

The Company seeks summary judgment on the contention that Gibson is unable to present any evidence to establish pretext other than his own subjective disagreement with the Company's decision. We addressed this argument at some length with regard to Merle Pears, C.A. No. 87–415, and much of what we said there applies here as well. As to the specific facts of Gibson's case, the evidence presented raises significant questions concerning the depth and breadth of Gibson's experience in various areas, his qualifications for positions within the Company, the relationship of his experience and qualifications to the Company's avowed goal of retaining employees with "flexibility," and the reten-

tion, promotion and subsequent hiring and training of younger employees. These matters are far too complex to address on a cold record, particularly when much of it must rest on judgment as to credibility. Summary judgment in C.A. No. 87–2557 will be denied.

## CONCLUSION

For the reasons stated above, summary judgment will be granted in favor of defendant on C.A. No. 87–417, and denied as to all other cases.