**Richard G. COOK, Plaintiff,**

v.

**BUXTON, INC., Defendant.**

**Civ. A. No. 87–0002.**

United States District Court, W.D. Pennsylvania.

March 6, 1992.

Joel S. Sansone, Pittsburgh, Pa., for plaintiff.

Richard B. Sandow, Pittsburgh, Pa., for defendant.

## OPINION

ZIEGLER, District Judge.

Pending before the court is the motion for summary judgment filed by defendant, Buxton, Incorporated. Plaintiff, Richard Cook, commenced this civil action in which it is alleged in Count I that defendant, his former employer, terminated his employment in violation of the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 *et seq.* In Count II, plaintiff alleges that his termination also violated the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* This court has jurisdiction over Count I under section 7(c) of ADEA, 29 U.S.C. § 626(c), and we exercise pendent jurisdiction over the state-law claim in Count II.

Defendant offers two grounds for this court to grant its motion for summary judgment. Defendant contends that plaintiff is precluded from bringing the ADEA action because he executed a knowing and voluntary release of his rights under the Act. Alternatively, defendant contends that because plaintiff has failed to meet his evidentiary burden of showing that material issues of fact exist as to whether defendant's proffered reason for the termination was a pretext for discrimination, it is entitled to judgment as a matter of law. "Summary judgment is only appropriate when, after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990) (citation omitted). Furthermore, summary judgment may not be granted "if there is a disagreement over what inferences may be drawn from the facts even if the facts are undisputed." *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1380 (3d Cir.1991). For the reasons set forth below, the motion for summary judgment will be denied.

## I.

Plaintiff began working as a commission salesman for defendant in October of 1972 and continued in that position until 1980. Plaintiff then became a district sales manager, a position which included both sales and oversight responsibilities. In early 1984, plaintiff voluntarily relinquished his management position and returned to full-time sales.

On January 29, 1985, plaintiff met with representatives of Buxton, Inc., at the Greentree Marriott. At this meeting, the representatives informed plaintiff that his employment was terminated effective January 31, 1985, and provided him with a termination notice captioned "REDUCTION–IN–FORCE TERMINATION OF EMPLOYMENT." A copy of the notice is attached to Defendant's Answer. The notice, in addition to formally giving plaintiff notice of the termination, provided three options from which plaintiff could select a severance "package." The final paragraph of the notice provided: "In consideration of the foregoing selection, I hereby release Buxton, Inc., its Officers and employees from any and all actions, causes of actions, claims and liabilities arising from my employment or subsequent termination of same." The notice further provided that plaintiff would have until February 8, 1985, to select one of the options, and if plaintiff failed to select, that the first option would be selected by default.

According to the notice itself, the first option would provide plaintiff with only those benefits to which he was legally enti-

tled, namely vacation pay owing at the time of termination and a continuation of group health insurance, at plaintiff's cost, for 39 weeks. In effect, this option provided nothing more than if defendant offered no options from which to select, that is, it offered no severance "benefits." Plaintiff signed the notice on February 4, 1985, selecting the second option providing him with 13 weeks of continued income and a combination of health, life, and disability coverage which was to be, for the most part, at defendant's expense.

■ Defendant contends that plaintiff's selection of a severance option by which plaintiff signed the form containing the paragraph with the release language, along with the attenuating circumstances under which that signature was made, constitutes a legally valid waiver of plaintiff's rights under ADEA. It is clear that an employee may validly waive or release his or her rights under ADEA, provided, however, that the waiver is made knowingly and willfully. *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 518 (3d Cir.1988). In *Coventry,* the Court of Appeals for the Third Circuit "adopt[ed] the view that in the determination of whether a waiver was signed knowingly and voluntarily, review of the totality of the circumstances in which it was signed must be had." *Id.* at 524. The relevant factors in reviewing the totality of the circumstances include, but are not limited to, the following considerations:

(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled to by contract or law.

*Cirillo v. Arco Chem. Co.,* 862 F.2d 448, 451 (3d Cir.1988). Our analysis of these factors and a comparison of the facts in the present case with those in *Coventry* (no waiver) and *Cirillo* (waiver) leads us to conclude that the release clause and surrounding circumstances here are insufficient to waive rights under ADEA. We note that the relevant factors, in addition to not being exhaustive, often overlap one another.

The language argued by defendant to support a finding of waiver provides: "In consideration of the foregoing selection, I hereby release Buxton, Inc., its Officers and employees from any and all actions, causes of actions, claims and liabilities arising from my employment or subsequent termination of same." To summarize, defendant argues that because of plaintiff's education and business experience, the clarity of the release language, and the opportunity plaintiff was afforded to seek the advice of counsel, plaintiff knowingly and intelligently waived his right to sue.

Plaintiff admits in his deposition that he received a bachelor's degree in business administration from Duquesne University in 1950. In addition, as defendant correctly points out, plaintiff testified as a Buxton witness a former Buxton employee's ADEA trial. Although the record is unclear at this point, it appears that the trial occurred in the early to mid–1970's. Although the length of time between having testified for his employer and his own termination, approximately ten years or more, is somewhat disturbing, we agree that plaintiff's education and experience suggest that he made a knowing waiver.

Defendant also notes that the language of the last paragraph in the notice is clear and unambiguous. Admittedly, it purports to release defendant from "any and all actions ... arising from [plaintiff's] termination." In this regard, it is similar to the release in *Cirillo,* which we note referred to "claims ... as a result of this termination [and] includes ... claims arising under federal, state, and local laws prohibiting employment discrimination." 862 F.2d

at 453. In contrast, the form signed by the plaintiff in *Coventry* contained a specific release of claims pursuant to ADEA. 856 F.2d at 516. Although it has not been held absolutely necessary, courts have considered it significant whether discrimination claims are specifically mentioned in the release. *See Ponzoni v. Kraft General Foods, Inc.*, 774 F.Supp. 299, 310 (D.N.J. 1991); *Pears v. Spang*, 718 F.Supp. 441, 445–46 (W.D.Pa.1989). We find that the failure to include language which specifically addresses ADEA or laws prohibiting employment discrimination significantly diminishes the weight of this factor in support of defendant's position.

Moreover, although not specifically listed as a factor by the Court of Appeals in *Coventry* and *Cirillo*, we also find it significant that the release here comprised only four lines of text in a two-page document and was not otherwise made conspicuous by defendant. In contrast, the release held valid in *Cirillo* was substantially longer, more detailed, and printed in boldface.

Defendant also contends that plaintiff had sufficient opportunity to consult with counsel. No argument has been advanced that plaintiff was prohibited or discouraged from consulting with an attorney. Defendant's argument in this regard is misplaced. The relevant inquiry is "whether consultation with a lawyer was encouraged orally or in writing, not whether a plaintiff in fact received the benefit of counsel." *Ponzoni*, 774 F.Supp. at 312. *See also Cirillo*, 862 F.2d at 445; *Coventry*, 856 F.2d at 524 ("significant is the absence in the record of any indication that [plaintiff] was encouraged by [his employer] to consult an attorney prior to signing the release"). Thus, this factor weighs against finding that the release in question here constituted a valid waiver.

Similarly, there is no indication that plaintiff was afforded an opportunity to negotiate with Buxton over the terms of the severance package. In fact, the record thus far suggests that plaintiff was given a set of three options from which to chose—period. As mentioned previously, the no-tice even provided that if plaintiff failed to select from the available options, defendant would then select the first option by default. We find that this factor also supports our conclusion that plaintiff did not make a valid waiver.

The time for deliberation or selection of the option was approximately ten days—plaintiff received the notice on January 29, 1985, and was instructed to return it with an option selected by February 8, 1985. Plaintiff actually had the notice in his possession for only six or seven days before signing it. In *Cirillo*, where the Court of Appeals found the release to be valid, it noted that the terminated employees "were told that they could *not* sign the Release for at least five days ... [and] that they had up to at least one year after their termination to sign the Release." 862 F.2d at 453. Given the shorter duration here along with the strict deadline imposed by the defendant, we find that ten days is not a reasonable length of time in which to permit a terminated employee to deliberate.

In support of defendant's position, and plaintiff does not dispute this point, we recognize that the consideration provided in the second option in exchange for the release exceed the benefits to which plaintiff was entitled to by law or contract.

Because we find, after reviewing the totality of the circumstances surrounding plaintiff's signing of the termination/severance-option notice, that the relevant factors in favor of upholding the validity of the release are outweighed in both number and strength by those to the contrary, we cannot conclude that plaintiff knowingly and voluntarily signed a release of his rights under ADEA. We therefore hold that plaintiff's signing of the notice did not constitute a valid waiver.

## II.

Defendant contends in the alternative that it is entitled to summary judgment because plaintiff has failed to meet its evidentiary burden. More precisely, defendant argues that plaintiff has failed to raise sufficient material issues of fact to rebut its proffered reason for plaintiff's

termination. The Court of Appeals for the Third Circuit recently summarized the evidentiary burdens in actions under ADEA in *Gray, et al. v. York Newspapers, Inc., et al.*, 957 F.2d 1070 (3d Cir.1992). The Court of Appeals stated:

> The plaintiff must first establish a *prima facie* case of discrimination. In the absence of direct evidence, a plaintiff may establish a *prima facie* case by demonstrating by a preponderance of the evidence that he or she (1) belongs to a protected class, *i.e.*, is at least 40 years of age; (2) was qualified for the position; (3) was dismissed despite being qualified; and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination.... The burden of production then shifts to the defendant-employer who can dispel the inference by articulating a legitimate business reason for discharging the employee.... [T]he employee then must [prove by a preponderance of the evidence that the articulated reasons are a pretext for discrimination.... Pretext may be proved either 'directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence'.... At all times, the plaintiff-employee has the burden of persuading the trier of fact that age was a determinative, though not necessarily the sole, factor in the defendant-employer's decision to take an adverse employment action against the employee.

*Id.*, 957 F.2d at 1078–79 (citations omitted). ▪ We find, and defendant does not seriously contest, that plaintiff has established a *prima facie* case. We further find that defendant has articulated a legitimate non-discriminatory reason for its termination. Defendant submits, as we understand, that plaintiff was terminated due to a combination of reduction in force and reorganization of its sales force and plaintiff's poor performance. In this regard, defendant has offered statistical evidence to support its contention that plaintiff performed poorly in his sales position. Thus, the main focus for our consideration is whether plaintiff has satisfied his burden of demonstrating that defendant's articulated reason was pretextual.

Defendant relies heavily on *Healy v. New York Life Ins. Co.*, 860 F.2d 1209 (3d Cir.1988), for the proposition that summary judgment may be entered for an employer where the proffered reason for termination is a reduction in force and the plaintiff-employee fails to offer any evidence that this reason is a pretext for discrimination. Although we recognize that this is a close case, as was that in *Healy*, summary judgment cannot be entered for defendant at this stage of the litigation for the following reasons.

While defendant has submitted substantial evidence of poor sales performance, it has offered little more than the bare assertion in the caption of the termination notice that plaintiff's termination was caused, in part, by a reduction in force. Under such circumstances, we find that plaintiff's failure to offer evidence to rebut this part of defendant's contention does not warrant summary judgment. Moreover, plaintiff's deposition, which both parties rely upon for their respective positions regarding defendant's motion for summary judgment, suggests to the court at this time that the focus of the parties has been upon the performance of plaintiff in his sales position. After considering the evidence in the light most favorable to plaintiff, we find that the existence of genuine issues of material fact preclude the court from granting defendant's motion. The motion for summary judgment must be denied.