# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00120-CV

**Buc-ee's, Ltd., a/k/a Buc-ee's, Inc., Appellant**

**v.**

**John J. Hribek, Appellee**

### FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT
### NO. 13,050, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## C O N C U R R I N G   O P I N I O N

I concur in the result reached by the majority, but write separately to emphasize how close the issue of knowing and voluntary waiver is in this case, even in the context of summary judgment. Other courts have noted that issues involving the "totality of the circumstances" test are "unusual to resolve on summary judgment" due to their fact-intensive nature. *See Elf Atochem N. Am. v. United States*, 914 F. Supp. 1166, 1170 (E.D. Pa. 1996).[1] The totality of the circumstances is difficult to assess even in a case such as this, where numerous factors strongly favor one of the parties.

---

[1] Federal law, and not state law, governs all questions relating to purported releases of federal statutory causes of action. *Rogers v. General Elec. Co.*, 781 F.2d 452, 454-55 (5th Cir. 1986).

The majority analyzes whether Hribek waived his rights knowingly and voluntarily by applying the six-factor test relied upon by numerous federal courts.[2]  An employee need not meet all six of the requirements in order to show that the release was not knowing and voluntary.  *See Riddell v. Medical Inter-Insurance Exch.*, 18 F. Supp. 2d 468, 474 (D.N.J. 1998) (finding that employee did not waive rights knowingly and voluntarily even though "some of the relevant factors weigh in [employer's] favor").  In this case, Hribek makes strong arguments in his favor on five of the six factors.

*Education and Business Experience*

The first factor,[3] that of the employee's level of education and business experience, does not appear to favor Hribek.  Courts have found this factor to be a "minimal threshold," usually satisfied by a high-school diploma.  *See Ponzoni v. Kraft Gen. Foods*, 774 F. Supp. 299, 310 (D.N.J. 1991).  Hribek's credentials, including a high school diploma and years of convenience-store management experience, meet this threshold.  However, courts analyzing this factor do not

---

[2]  Other courts have also considered a seventh factor, which analyzes whether the employee "knew or should have known his rights upon execution of the release."  *Cirillo v. Arco Chemical Co.*, 862 F.2d 448, 452 (3d Cir. 1988).  This factor would also weigh in favor of Hribek.  Courts have found that employees know their rights when the release "clearly informed employees of their rights and the manner in which they could enforce these rights."  *Id.* at 453.  No such information was provided to Hribek.  While the release makes mention of "employment EEOC, ADA or TWC claim[s]," this passing mention of potential grounds for relief hardly amounts to a clear explanation of Hribek's rights.  Further, there is no evidence that Hribek's background or experience should have alerted him to the specific legal remedies available to him.  Hribek's attempt to revoke the agreement, sent the day after the waiver was signed, also indicated that he had been unaware of some of his rights (such as those under the Family and Medical Leave Act) when he signed the release.

[3]  For the sake of consistency, we follow the numbering of the factors set out in *Smith v. Amedisys, Inc.*, 298 F.3d 434, 441 (5th Cir. 2002), as quoted by the majority.  We note that other courts have numbered the factors differently.

2

necessarily reach the conclusion that, because the employee meets the minimum requirements, the factor favors the employer. *See Riddell v. Medical Inter-Insurance Exch.*, 18 F. Supp. 2d 468, 472 (D.N.J. 1998) (noting that where employee was "skilled at analyzing complex insurance contracts" but did not have education beyond high school diploma, age/experience factor "does not weigh greatly in favor of one party or the other"). In this case, Hribek's education and business experience, while meeting the minimal threshold, is not so extensive that this factor weighs in Buc-ee's favor. *See id.*

*Amount of Time to Examine the Release*

The second factor involves the amount of time that Hribek had possession of or access to the release agreement before signing it. Hribek had the release in his possession for less than a day. This time period is far short of the one month that other courts have found to be an adequate time for review. *See Cirillo v. Arco Chemical Co.*, 862 F.2d 448, 453 (3d Cir. 1988) (indicating that "one month is a reasonable time for deliberation" regarding decision to sign release). The short period of time that Hribek had to evaluate the release even falls short of the ten days that another court found *insufficient* to properly consider a release. *Cook v. Buxton, Inc.*, 793 F. Supp. 622, 625 (W.D. Pa. 1992) (concluding that "ten days is not a reasonable length of time in which to permit a terminated employee to deliberate" regarding release); *see also Cole v. Gaming Entm't, LLC*, 199 F. Supp. 2d 208, 213 (D. Del. 2002) (indicating that one day to review release "seems insufficient under either Title VII or the ADEA"). Further, other courts have found it favorable to the employee when neither the language of the release nor the company representatives indicate to the employee that he has time to deliberate. *See Riddell*, 18 F. Supp. 2d at 473. While Buc-ee's

3

contends that Hribek did not ask for more time to consider the release, it does not argue that he was ever made aware that he had any additional time to deliberate.

*Role in Deciding the Terms of the Release*

The third factor involves the role of the plaintiff in deciding the terms of the agreement. The opportunity to negotiate "suggests that the atmosphere surrounding the signing of the release was not oppressive and thus indicates a voluntary waiver." *Id.* at 473-74. This element favors the employer when "[t]here is no evidence that plaintiffs were denied an opportunity to negotiate, nor that they were given a 'take it or leave it' offer." *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 937 (5th Cir. 1994). While Hribek had some input into the terms of the agreement, Charles Peter Alexander, the Buc-ee's employee who presented the agreement to Hribek, stated during his deposition that he told Hribek, "Well, really, I'd like for you to do it today . . . if you're going to resign." This statement suggests a "take it or leave it" atmosphere rather than an open and permissive negotiating environment.

*Clarity of the Release*

The fourth factor involves the clarity of the release agreement. Courts have generally held that a release is valid if "written in plain English" and the language is not "shrouded in legalese." *See Riddell*, 18 F. Supp. 2d at 472. Further, the release should include "reference to specific claims that are being waived." *See id.* In this case, the release states that Hribek will not file "an unemployment EEOC, ADA or TWC claim or any other claim with any state or federal agency whatsoever in connection with Buc-ee's or its employees." The release does not state,

4

however, that Hribek agrees not to file a *lawsuit* regarding any of the matters relating to the release. In addition, the release does not mention possible relief pursuant to the Family and Medical Leave Act (FMLA), under which Hribek later filed a claim. The fact that Hribek attempted to revoke the agreement the next day, claiming that he had been unaware of some of the rights he had waived, creates further doubt regarding the clarity of the agreement.

*Opportunity to Seek Counsel*

The fifth factor examines whether the employee consulted with or was encouraged to consult with an attorney. Courts have held that the "[m]ore important consideration is whether consultation with a lawyer was encouraged . . . rather than whether the plaintiff in fact received the benefit of counsel." *Cirillo*, 862 F.2d at 453. It is undisputed that Hribek did not consult with an attorney. Further, while Buc-ee's stated that Hribek never requested the assistance of an attorney, Buc-ee's presents no evidence that Hribek was ever *encouraged* to consult with an attorney.

*Consideration for Signing Release*

The sixth factor involves the consideration given to the employee, and whether it exceeds the benefits he was already entitled to under contract or law.[4] The release indicates that the

---

[4]  The consideration issue also affects the burden-shifting analysis that precedes the evaluation of the totality of the circumstances. When examining whether a release was valid, courts place the initial burden on the employer to "establish[] that its former employee 'signed a release that addresses the claims at issue, *received adequate consideration*, and breached the release.'" *Smith*, 298 F.3d at 441 (quoting *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994)) (emphasis added). Only after the employer has met this burden does the burden shift to the employee to show that, under the totality of the circumstances, the release was not knowing and voluntary. In this case, however, it appears that Hribek did not seek summary judgment with regard to Buc-ee's initial burden to show adequate consideration.

relevant consideration was "3 weeks salary @ $585 per week, plus vacation hours and bonus for Sept. & part Oct. (through Oct. 26)." As the majority correctly states, based on this language "there is no evidence that Hribek received more compensation than was already due him at the time of the negotiation—assuming that he was entitled to remain employed through October 26, 2004." In its brief, Buc-ee's argues that the consideration for the release was not the pay, vacation hours, and bonuses for the interim between October 5 and October 26, but rather the acts of allowing Hribek to set his resignation date three weeks in the future and paying Hribek salary and bonuses for the period of October 5 through October 26, 2004 without requiring him to work. Such consideration, however, was not memorialized in the agreement, and Buc-ee's could presumably have required Hribek to work or terminated him prior to October 26 if it so chose.[5] Accordingly, the consideration factor, like the four factors before it, weighs heavily in favor of Hribek.[6]

---

[5] Buc-ee's counsel admitted as much at oral argument, stating that Hribek was technically expected to work during this period, and that Buc-ee's could have terminated him when he did not return to work.

[6] This analysis of lack of consideration potentially impacts the validity of the contract itself. Under Texas law, lack of consideration constitutes an affirmative defense to an action on a written agreement, and in particular can be used to respond to the assertion that a claim is barred by a valid release. *See 1464-Eight, Ltd. v. Joppich*, 154 S.W.3d 101, 103 (Tex. 2004). However, the defense must be properly pleaded under the rules of civil procedure. *See* Tex. R. Civ. P. 94 (affirmative defenses); *see also* Tex. R. Civ. P. 93(9) (explaining that pleadings alleging lack of consideration must be verified); *Lakeway Co. v. Leon Howard, Inc.*, 585 S.W.2d 660, 662 (Tex. 1979) ("Lack of consideration is an affirmative defense and must be pleaded.").

To paraphrase a popular recording artist, five out of six isn't bad.[7] The purpose of this exercise, however, is not to argue that the judgment in favor of Hribek should be upheld,[8] but rather to illustrate the difficulties of resolving the "totality of the circumstances" in a summary judgment proceeding.[9] Under this analysis, it does not matter how many factors one has on one's side. The factors are merely guideposts along the way to the ultimate factual determination of whether the waiver was knowing and voluntary. Such matters are exceedingly difficult to determine on summary judgment, where the "analysis of the totality of the circumstances [must] demonstrate[] the futility of a trial," *O'Hare v. Global Natural Res., Inc.*, 898 F.2d 1015, 1017

---

[7] *See* Meat Loaf, *Two out of Three Ain't Bad*, on Bat out of Hell (Cleveland Int'l 1977).

[8] Buc-ee's argues that even if the waiver was invalid, Hribek's failure to "tender back" the consideration amounts to ratification of the agreement. Leaving aside the issue of what exactly constitutes consideration in this case, we note that the Supreme Court has found the tender back doctrine of ratification inapplicable to ADEA claims. *Oubre v. Entergy Operations*, 522 U.S. 422, 428 (1998). Federal circuit courts are split, however, on whether the tender back doctrine applies to other federal remedial statutes. The Fifth Circuit has held that failure to tender back consideration ratifies an otherwise invalid release of federal claims. *See, e.g., Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 323 (5th Cir. 2003). However, state courts located in the Fifth Circuit "are not bound by Fifth Circuit precedent when making a determination of federal law," *Magouirk v. Phillips*, 144 F.3d 348, 361 (5th Cir. 1998). Other circuits have held that "the tender back doctrine should be inapplicable to 'a variety of federal remedial statutes,'" such as Title VII. *Cole v. Gaming Entm't, LLC*, 199 F. Supp. 2d 208, 216 (D. Del. 2002) (quoting *Long v. Sears, Roebuck & Co.*, 105 F.3d 1529, 1541 (3d Cir. 1997)).

[9] The task is particularly difficult when the opposing party contests many of the six factors, as Buc-ee's does in this case. *See Elf Atochem N. Am. v. United States*, 914 F. Supp. 1166, 1170 (E.D. Pa. 1996).

(5th Cir. 1990), and where any doubts must be resolved in favor of the nonmoving party.[10]  Hribek falls only slightly short of this demanding standard.



Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Filed:  December 31, 2009

---

[10] The traditional perception of the role of summary judgment in Texas presents yet another hurdle for Hribek to overcome.  Though this case implicates numerous aspects of federal substantive law, the trial of the case is governed by state procedural law.  *See Dutton v. Southern Pacific Transp.*, 576 S.W.2d 782, 784 (Tex. 1978) (noting that, when employment cases governed by federal law "are filed in our state courts they are tried in accordance with our own applicable Rules of Civil Procedure").  Summary judgment motions have historically been viewed less favorably in Texas courts than in federal courts, where "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  In Texas, by contrast, the "purpose of summary judgments" is limited to "eliminat[ing] patently unmeritorious claims and untenable defenses." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).  While the amendment of Texas Rule of Civil Procedure 166a in 1997 "obviated" many, if not all, of the practical differences between summary judgment procedure in federal and Texas courts, *see Huckabee v. Time Warner Entertainment Co.*, 19 S.W.3d 413, 433 (Tex. 2000), longstanding Texas practice has generally limited the availability of summary judgment in the state system.